FILED'09 FEB 11 12:40USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HENRY C. LINEBAUGH,                          CV. 06-1181-PA

               Petitioner,              OPINION AND ORDER

    v.

BRIAN BELLEQUE,

               Respondent.


NELL BROWN
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204

     Attorney for Petitioner


JOHN KROGER
Attorney General
LESTER R. HUNTSINGER
Oregon Department of Justice
1162 Court Street, NE
Salem, OR  97301

     Attorneys for Respondent


1 - OPINION AND ORDER

PANNER, District Judge

Petitioner, in the custody of the Oregon Department of Corrections at the time of filing, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges the legality of his 1995 state court convictions. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#1) is DENIED.

### BACKGROUND

Petitioner, Linda Hill, and Mr. Fogarty, the father of Ms. Hill's youngest child, met through CB radio conversations and became friends. (Respt.'s Ex. 103, Trial Tr. Vol. 1, 36.) On July 17, 1995, Petitioner babysat Ms. Hill's six children so she could make it to an appointment. (*Id.* at 33, 37-38.) That evening, the two girls, ages 7 and 9, told their oldest brother, 12-year Virgil, that Petitioner had touched them inappropriately. (Respt.'s Ex. 104, Trial Tr. Vol. 2, 95-97.) He told his mom and after she talked with the girls she called the Medford Police Department. (Respt.'s Ex. 103, Trial Tr. Vol. 1, 42.)

Detective Johnson interviewed Ms. Hill and Mr. Fogarty, and the two girls the next morning at the Child Advocacy Center. Following the interviews, Detective Johnson and the parents formulated a plan for Ms. Hill to call Petitioner under the pretext she needed him to watch the kids while she got medical attention for one of the boys. (*Id.* at 27, 41-45.) When Petitioner arrived at the Hill/Fogarty home, Detective Hill met him outside and explained that the girls had reported he had exposed himself and

2 - OPINION AND ORDER

touched them sexually.  (*Id.* at 27.)  Petitioner denied touching the girls sexually and said he was babysitting the kids and that he took them swimming.  Detective Johnson asked Petitioner about the pants he was wearing, which the officer noted were held together at the top with a large safety pin and had a zipper that was not staying up.  (*Id.* at 28.)  Petitioner replied the pants were the ones he had worn the previous day, and indicated that he never wore underwear.  (*Id.*)  Detective Johnson took Petitioner into custody following the interview outside the Hill/Fogarty home.  (*Id.* at 29.)

Petitioner was charged with two counts of Sex Abuse I relating to the 7-year old's allegations (Counts One and Two), and two counts of Sex Abuse I relating to the 9-year old's allegations (Counts Three and Four).  Count One was dismissed on the State's motion before the case went to the jury.  Following a trial by jury, at which the two girls and Virgil testified, Petitioner was found guilty on the remaining three counts and sentenced under Ballot Measure 11 to two concurrent 75-month terms and one consecutive 75-month term for a total of 150 months imprisonment.

Petitioner directly appealed his convictions raising, *inter alia,* violation of his Fourteenth Amendment right to a fair trial when the prosecutor made comments alluding to "more abuse" during his opening summation.  (Respt.'s Ex. 105, 9-13.)  The Oregon Court of Appeals affirmed the conviction without a reasoned opinion, but remanded for correction of the term of post-prison supervision.

3 - OPINION AND ORDER

*State v. Linebaugh*, 149 Or.App. 771, (1997);  Respt.'s Ex. 107.

The Oregon Supreme Court then denied review.  326 Or. 234 (1998).

Petitioner sought state post-conviction relief ("PCR") raising

claims of ineffective assistance of counsel, including the failure

to object to improper comments during closing argument and the

failure to investigate.  In the failure to object claim Petitioner

identified comments near the end of the prosecutor's opening

summation argument as improper:

> Prosecutor:  Some explanations for the inconsistencies,
> and I think the best explanation for the inconsistencies,
> is probably that it all happened.  **I think there's more
> abuse that (sic) you know about.**  I think it all
> happened - -
>
> Defense counsel:  **"Oh, I'll object to that.  God!
> Perhaps it's the "M" word for him suggesting that.**
>
> The Court:  Mistrial?  Because it's personal opinion, or
> what?
>
> Defense counsel:  Well, the personal opinion that "there
> is more abuse than we even know about."
>
> The Court:  Is that supported by the evidence?
>
> Prosecutor:  Your Honor, it's just an explanation for
> inconsistencies.
>
> The Court:  I think it transgresses rational argument.
> **The objection is sustained** to the argument.
>
> Defense counsel:  Curative instruction or mistrial?
>
> The Court: Mistrial denied.  **There's no evidence of any
> other abuse.  As I indicated, you have to confine
> yourself to what you heard.**
>
> Prosecutor:  **Sometimes we talk more than we should.**
> [Defense counsel] is going to talk to you next, and I
> will talk to you after [counsel] talks to you, but the

Judge will instruct you.  He'll instruct you about the
law, he'll instruct you about evaluating witnesses'
testimony, and there's something also you get to use.
You get to use your common sense, and I think in this
case it's a classic case of using your common sense.  If
you use your common sense, you try to pay attention to
the testimony and pay attention to what was said, I think
everyone here knows that the Defendant is guilty, and I
trust you'll come back with guilty verdicts.

(Respt.'s Ex 104, Trial Tr. Vol. 2 at 125-127.)

In the failure to investigate claim Petitioner alleged he
informed counsel he felt the accusations against him were part of
a conspiracy, between Ms. Hill and the neighbor with whom he had a
land dispute (the Keltzes), to acquire title to his land, but
counsel did not investigate this defense.  In conjunction with his
PCR petition, Petitioner filed a *pro se* motion for funds to trace
his land title in furtherance of his conspiracy theory, but PCR
counsel told the court he had been unable to find a link between
Ms. Hill and the Keltzes, and he could not endorse expending funds
on land title research without that link.  (Respt.'s Ex. 125, 4-6.)
The PCR court found that, in the absence of a known link between
Ms. Hill and the Keltzes, the issue before the court was limited to
whether or not trial counsel should have found a link, and denied
Petitioner's motion for funds.    (Respt.'s Ex. 125, 5-6.)
Ultimately, the PCR court denied relief on Petitioner's claims.
(Respt.'s Ex. 128.)  The Oregon Court of Appeals affirmed without
opinion, and Oregon Supreme Court denied review.  (Respt.'s Exs.
133, 134.)

Petitioner filed the instant Petition for Writ of Habeas Corpus (#1) raising four grounds for relief. In his supporting memorandum, Petitioner expressly narrows his claims for relief to the following:

> Ground One: Petitioner's rights to a fair trial and due process protected by the Fourteenth Amendment were violated by improper prosecutorial comments on closing to the jury.
>
> Ground Two: Trial counsel provided ineffective assistance in violation of the Sixth Amendment when he failed: 1) to object to and adequately cure improper statements made by the prosecutor during closing arguments, and 2) to investigate the motivation of a key witness.

(Petr.'s Mem., #29, 9; Sur-Reply, #38, 1.) Respondent acknowledges Petitioner exhausted the claims outlined in Ground Two, but raises the defense of procedural default as to Ground One asserting Petitioner failed to present this claim in his Petition for Review to the Oregon Supreme Court. (Respt.'s Response, #17, 3.) Petitioner contends he presented Ground One by "incorporat[ing] by reference the argument made in his appellate brief." (Petr.'s Sur-Reply, #38, 1.) Because Petitioner's Ground One claim is without merit, the court need not decide the exhaustion issue. 28 U.S.C. § 2254(b)(2).

## DISCUSSION

### I.    Procedural Issues

As a preliminary matter, it is important to note with respect to Ground One that Petitioner was specific in his direct appeal proceedings in detailing the line of argument in the prosecutor's

closing that was objectionable - the comments relating to "more abuse." (Respt.'s Ex. 105, 4-5 and 9-13; Respt.'s Ex. 108, 2-3 and 5.) The due process claim before this court in Ground One is limited to that line of argument. Petitioner also seeks to litigate the prosecutor's vouching for a witness, mischaracterization of testimony, and inflammatory statements during closing argument. (Petr.'s Memorandum, #29, 13-14.) These alleged improper comments are distinct arguments that were not objected to at trial and were not fairly presented to the state courts, and are procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (state courts must have an opportunity to act on claims before they are presented in a habeas petition); *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (claim must be fairly presented to state's highest court); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (factual and legal basis for the claim must be presented to the state court); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

Petitioner argues that any default should be excused pursuant to the fundamental miscarriage of justice exception to procedural default. The "miscarriage of justice" exception to procedural default is limited to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). A

claim of actual innocence must be supported with "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

The required evidence must create a colorable claim of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *See id.* at 321. It is not enough that the evidence show the existence of reasonable doubt, petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." *Id.* at 329; *see Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001) ("the test is whether, with the new evidence, it is more likely than not that no reasonable juror would have found [petitioner] guilty").

Petitioner argues he is actually innocent sufficient to excuse the default of claims relating to additional improper comments on summation. If the evidence he offers is not sufficient to satisfy the actual innocence gateway, he seeks an evidentiary hearing to support his argument. (Petr.'s Memorandum, #29, 27.)

As evidence of his innocence, Petitioner offers documentation of Ms. Hill's acquisition of his land in 1999 in a tort proceeding on behalf of her daughters after his convictions, (*Id.*, Exs. 1-7), documentation of Ms. Hill's indictment in 1999 and convictions in 2000, on numerous counts of Rape and Sodomy relating to incidents involving one of her daughters and a victim in Petitioner's case,

(*Id.*, Exs. 8-9), and a psychologist's notes from a 1999 counseling session with Ms. Hill's daughter, after her mother's arrest, in which the victim states that "nothing much happened" when asked about earlier abuse by a "family friend." (*Id.*, Ex. 10.) Petitioner contends it is "likely" he is the family friend in question and that the victim recanted by stating "nothing much happened." (Petr.'s Sur-Reply, #38, 3.)

While the evidence Petitioner submits establishes Ms. Hill gained title to Petitioner's land after his convictions, that her actions with respect to her daughter around the same time were deplorable, and that her daughter told a counselor that "nothing much happened" in a prior instance of abuse involving a family friend, Petitioner has not affirmatively shown that he is the "family friend." Assuming that he is the family friend, the victim's comment that "not much happened" must be taken in the context that it was made a few months after her mother was indicted for prostituting her in exchange for drugs, (Petr.'s Memorandum, Exs. 8 and 10, p 2), and four years after she accused Petitioner of inappropriate touching. In this context, the evidence does not establish that it is "more likely than not that no reasonable juror would convict [Petitioner]" of the crime for which he is incarcerated. Petitioner, thus, has not satisfied the actual innocence gateway for excusing the procedural default relating to the additional closing comments he seeks to include in Ground One.

Nor has he shown that he is entitled to an evidentiary hearing in support of his claim of innocence.

### Evidentiary hearing

Petitioner requests an evidentiary hearing to support his claim of innocence, not ineffectiveness.[1] (Petr.'s Sur-Reply, #38, 5.) Respondent asserts Petitioner has not shown he was not at fault in failing to develop the evidence in state court and he has not met the requirements of § 2254(e)(2) for a hearing. (Reply, #34, 20.) Petitioner argues the standards for granting a hearing in § 2254(e)(2) do not apply in this instance, but the court disagrees.

In Petitioner's state PCR trial in September, 2003, PCR counsel told the court that, despite his efforts, he could not find a link between Ms. Hill and the Keltzes to support the conspiracy theory. (Respt.'s Ex. 125, 4-6.) The evidence Petitioner presents with his Memorandum dates to several years before the PCR trial. Petitioner contends the evidence he wants to present corroborates his theory that the children's accusations were part of a conspiracy between their mother and the Keltzes to gain title to his property. However, Petitioner fails to show what might be developed at a hearing which would differ from the evidence he has

---

[1]In his Memorandum, (#29, p 25, FN6) Petitioner asks for an evidentiary hearing to support his ineffectiveness claim if the court finds the record insufficient. Because the court finds the record sufficient for adjudication of the claim, there is no need for an evidentiary hearing.

already submitted and which would lead the court to conclude that
no reasonable fact finder would have found Petitioner guilty.
Therefore, a hearing is not warranted.  *See Gandarela v. Johnson*,
286 F.3d 1080, 1087-88 (9th Cir. 2002).

## II.    **The Merits**

A.    <u>Standards and scope of review under § 2254.</u>

The standard of review applicable to habeas corpus petitions
on behalf of a person in custody pursuant to the judgment of a
state court is set out in 28 U.S.C. § 2254 (d):

> "An application [ ] shall not be granted with respect to any
> claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary
> > to, or involved an unreasonable application
> > of, clearly established Federal law as
> > determined by the Supreme Court of the United
> > States; or
> >
> > 2) resulted in a decision that was based on an
> > unreasonable determination of the facts in
> > light of the evidence presented in the State
> > court proceeding."

In construing this provision the Supreme Court stated: "[I]t
seems clear that Congress intended federal judges to attend with
the utmost care to state court decisions, including all of the
reasons supporting their decisions, before concluding that those
proceedings were infected by constitutional error sufficiently
serious to warrant the issuance of the writ." *Williams v. Taylor*,
529 U.S. 362, 386 (2000).  The last reasoned decision by the state
court is the basis for review by the federal court.  *See Ylst v.*

*Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002).

Here, in reviewing Ground One, the limited rational supporting the trial court's decision to deny a mistrial and instead give corrective instructions after sustaining the objection during the prosecution's closing argument requires this court to conduct an independent review of the record. Nevertheless, the court gives deference to the ultimate decision of the trial court. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) citing *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In reviewing Ground Two, the Court looks to the PCR trial court's reasoned decision.

(1) Contrary to or an unreasonable application of Federal law

Habeas relief may be granted under § 2254(d)(1) when "the state court identifies the correct governing legal principle [ ] but unreasonably applies that principle to the facts of the [ ] case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*), *cert. denied*, 126 S. Ct. 484 (2005). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. A state court decision is "contrary to" clearly established Federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams*, 529 U.S. at 388.

An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle [ ] but unreasonably applies that principle to the facts of the [ ] case." *Lambert*, 393 F.3d at 974 (citing *Williams*.) "[I]t is the habeas applicant's burden to show that the state court applied [the law] . . . in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 24,25 (2002) (internal citations omitted).

(2)  Unreasonable determination of the facts

Habeas relief may be granted under § 2254(d)(2) when the state court decision is based on an unreasonable determination of the facts because the fact-finding process is flawed.  In reviewing state court decisions, "[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004).  This is a standard that will be met in few cases.  *Id.* at 1000.

B.  The Merits - Ground One

Petitioner alleges he was denied his right to a fair trial and due process under the Fourteenth Amendment when the prosecutor stated "I think there's more abuse that (sic) you know about" during closing arguments and the trial court "failed to cure the prejudice." (Petr.'s Sur-Reply, #38, 9.)  Respondent argues "[t]he error here did not so infect the trial as to deny [Petitioner] due

13 - OPINION AND ORDER

process." (Respt.'s Reply, #34, 9.)  The question is whether the state court acted in a manner that was contrary to, or an unreasonable application of clearly established federal law in addressing the prosecutor's improper statements.

*Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)) sets out the governing standard for evaluating whether a prosecutor's improper statements denied due process:  "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *See also Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005).  At issue here are comments near the end of the prosecutor's opening summation argument:

> Prosecutor:  Some explanations for the inconsistencies, and I think the best explanation for the inconsistencies, is probably that it all happened.  **I think there's more abuse that (sic) you know about.**  I think it all happened - -
>
> Defense counsel:  **"Oh, I'll object to that.  God! Perhaps it's the "M" word for him suggesting that.**
>
> The Court:  Mistrial?  Because it's personal opinion, or what?
>
> Defense counsel: Well, the personal opinion that "there is more abuse than we even know about."
>
> The Court:  Is that supported by the evidence?
>
> Prosecutor:  Your Honor, it's just an explanation for inconsistencies.
>
> The Court: I think it transgresses rational argument. **The objection is sustained** to the argument.

Defense counsel:  Curative instruction or mistrial?

The Court:  Mistrial denied.  **There's no evidence of any other abuse.  As I indicated, you have to confine yourself to what you heard.**

Prosecutor:  **Sometimes we talk more than we should.**

(Respt.'s Ex 104, Trial Tr. Vol. 2 at 125-127.)

In sustaining counsel's objection to the prosecutor's argument, the trial court signaled the argument was improper. Although the court denied counsel's motion for a mistrial, the court immediately issued a curative instruction to the jury: "There's no evidence of any other abuse.  As I indicated, you have to confine yourself to what you heard."

The curative instruction is very brief, but it is a direct and clear mandate that the jury must confine itself to the evidence presented, with a clear statement there was no evidence that other abuse occurred.  Moreover, the court delivered this instruction immediately upon sustaining counsel's objection, thus maximizing its impact.  *See United States v. Kerr*, 981 F.2d 1052, 1053 (9th Cir. 1992) (substance and timing of curative instruction is a factor in neutralizing harm).  Although Petitioner contends the prosecutor's responsive comment "[s]ometimes we talk more than we should" undermined the court's curative instruction, there is no evidence that is the case.  This court will not presume the comment undermined the court's instruction when counsel did not object, and the prosecutor's tone and delivery could convey a different meaning

than Petitioner suggests, for example, simply that the prosecutor recognized he went too far with his argument.

Furthermore, very shortly after the prosecutor's improper comments counsel made his summation argument, forcefully challenging the state's evidence and the witnesses' testimony by focusing on inconsistencies in the testimony of the three child witnesses, on the lack of corroborating or physical evidence, and suggesting the children's need for attention motivated their accusations. (Respt.'s Ex. 104, Trial Tr. Vol. 2 at 127-138.) Although the prosecutor had a final opportunity to address the jury after counsel's summation, he made no further reference to more abuse. The jury instructions that immediately followed included: 1) the court's directive to exclude from consideration matters the court ordered be stricken or to which it had sustained objections; 2) a reminder that the attorneys' arguments were not evidence; and 3) instructions to base decisions on the evidence presented. (*Id.* at 148-150.)

Upon an independent review of the record, this court does not find the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Accordingly, the state court decisions denying relief on this claim are neither contrary to, nor unreasonable applications of clearly established federal law. Habeas relief is, therefore, precluded.

/ / /

C.    The Merits - Ground Two

Petitioner alleges he received ineffective assistance of counsel when counsel failed 1) to object to and adequately cure improper statements made by the prosecutor during closing arguments, and 2) to investigate the motivation of a key witness. The principles articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), govern claims of ineffective assistance of counsel. For habeas relief to be granted, Petitioner must show the state PCR court adjudication of his claims was contrary to or an unreasonable application of *Strickland*.   This court finds he has not done so.

Under *Strickland*, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.   "Not every error that conceivably could have influenced the outcome undermines the reliability of the results of the proceeding." *Id*. at 693. Furthermore, the reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation. *Id*. at 690.

The PCR trial court issued the following Findings of Facts in its adjudication of Petitioner's claims:

> 1.    Petitioner, a convicted sex offender, sexually abused seven-year-old [victim] and nine-year-old [victim] while babysitting the two sisters.
>
> * * *
>
> 6.    Petitioner received adequate assistance of trial counsel.
>
> 7.    Counsel adequately investigated petitioner's case and presented favorable evidence at trial. Petitioner failed to prove that the victims' mother fabricated these claims in order to steal petitioner's property, or that counsel was inadequate for failing to raise such a defense.
>
> * * *
>
> 11.    Counsel cannot be considered inadequate for failing to object to the deputy district attorney's unintentional misrepresentation of facts during closing argument. The jury was instructed that closing arguments were not evidence, and that they were to base their verdict only on the evidence and testimony presented at trial. Further, the statements referred to by petitioner were not so inflammatory that they interfered with the jury's ability to render a fair verdict. An objection to the statements during closing argument would not have had a tendency to affect the outcome of petitioner's case.

(Respt.'s Ex. 127, 2-4.)    The PCR court issued the following Conclusions of Law:

> 1.    Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner's conviction, petition was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466. U.S. 668 (1984), or the Constitution of the State of Oregon.

* * *

> 4.   Petitioner did not prove any of his claims by a
> preponderance of the evidence.

(*Id.* at 4-5.)

Petitioner contends the PCR court improperly applied the preponderance standard to its legal analysis of his ineffective assistance of counsel claims, (Petr.'s Mem., #29, 18), and therefore the decision "was an unreasonable application of, and contrary to, clearly established Supreme Court precedent. . . ." (*Id.*)   Petitioner also contends the PCR court's finding (7) is incorrect and that the PCR court's decision is not entitled to deference.   (Petr.'s Mem., #29, 24.)

1)   Standard of proof

In its opinion letter denying Petitioner relief, the PCR trial court found:

> "[P]etitioner has failed to prove by a preponderance of
> the evidence that his counsel's conduct and defense of
> him was ineffective and inadequate or that his defense
> was prejudiced by his counsel's performance.  Petitioner
> has not established a substantial violation of a right
> guaranteed by the Federal or State Constitution."

(Respt.'s Ex. 126.)   ORS 138.620(2) governs the burden of proof in Oregon's PCR proceedings, and requires only that "[t]he burden of proof of **facts** alleged in the petition shall be upon the petitioner to establish such **facts** by a preponderance of the evidence." ORS 138.620(2) (emphasis added).   Oregon law does not require PCR courts to misapply any governing legal standards, and the PCR trial court did not do so in petitioner's case.   The PCR trial court

19 - OPINION AND ORDER

merely applied the preponderance of the evidence standard to the facts of the case as it was required to do. Courts have repeatedly held that litigants seeking to prevail in a PCR proceeding must prove the facts of their case by a preponderance of the evidence. *Holland v. Jackson*, 542 U.S. 649, 654 (2004); *Alcala v. Woodford*, 334, 862, 869 (9th Cir. 2003); *Davis v. Woodford*, 333 F.3d 982, 991 (9th Cir. 2003). The court therefore lends deference to the state court decisions as required by the Anti-Terrorism and Effective Death Penalty Act.

    2)   <u>PCR court decision</u>

The PCR trial court found counsel's representation was not deficient by failing to investigate and present the land conspiracy theory, or by failing to object to closing comments by the prosecutor. On habeas review, these state court findings are presumed to be correct absent Petitioner presenting clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Petitioner has not presented evidence sufficient to overcome the presumption of correctness.

The evidence before the PCR trial court included: 1) Petitioner's deposition presenting his theory that the victims accused him of abuse as part of their mother's conspiracy with the Keltzes to acquire his land, (Respt.'s Ex. 119, 5-12), and examples of objectionable comments by the prosecutor, (*Id.* at 14-15); and 2) trial counsel's affidavit stating: a) he "did 'not present evidence at trial that [Ms. Hill] wanted Petitioner to go to

20 - OPINION AND ORDER

jail/prison...' [He] could find no such evidence[,]" b) he failed
to interview Ms. Hill, but suspected that questioning her as to a
motive to frame Petitioner would have been pointless, c) he
interviewed Ms. Hill's husband, Kirk Forgey,[2] who was not aware of
a property dispute between Petitioner and his neighbors and stated
he had no financial interest in any of the property, d) counsel
felt that because Petitioner, Ms. Hill and her husband were
friends, "the idea of a conspiracy [was] a more difficult sell to
the jury." (Respt.'s Ex. 114.)  Counsel stated: "In a nutshell,
the idea that the kids and their parents set this prosecution up to
frame [Petitioner] to get his property was too farfetched.   I
believed that a greater likelihood of success would be the defense
that the children were simply mistaken about any sexual intent on
[Petitioner's] part." (*Id.*)  Counsel also attested to not
recalling the prosecutor's closing argument sufficiently to comment
on the claim that he should have objected to improper statements.
(*Id.*)

     During the PCR trial, PCR counsel stated that he had
attempted, but had been unable to find a link between Ms. Hill and
the Keltzes, a link necessary to make Petitioner's land-grab theory
relevant to his ineffective assistance of counsel claim. (Respt.'s
Ex. 125, 4-6.)  Since PCR counsel was unable to find the link, it

---

[2]The transcript includes reference to a Mr. Fogarty, an
individual sharing Ms. Hill's home and the father of her youngest
child.  The court assumes Kirk Forgey and Mr. Fogarty are the
same individual.

was problematic to assert that trial counsel should have found it and should have raised the land conspiracy as a defense. (*Id.*)

PCR counsel did not address the issue of the prosecutor's improper statements during the court proceeding, nor were they discussed in the trial memorandum. (Respt.'s Exs. 125, 112.) Petitioner gave examples of comments he felt were improper in his deposition, (Respt.'s Ex. 119, 14-16), but he did not show that failing to object to these comments constituted deficient representation, or that objections would have made a difference in the jury's verdict.

Based on the record before it, the PCR trial court found Petitioner had not shown trial counsel's representation was deficient. Based on this court's review of the case, the PCR trial court's decision was neither contrary to, nor an unreasonable application of established Supreme Court precedent.

## CONCLUSION

Based on the foregoing, Petitioner's Petition for Writ of Habeas Corpus (#1) is DENIED.

IT IS SO ORDERED.

DATED this _10_ day of February, 2009.

Owen M. Panner
United States District Judge